Next case is People v. Dosunmu, 515-0173. Counsel for the appellant, you may proceed, and please state your name for the record. My name is Christian Burrell, and I represent Emmanuel Sterling Dosunmu as your defendant. May it please the court, counsel. Emmanuel Dosunmu pled guilty to continuing financial enterprise, Class 1 felony, and was sentenced to 10 years incarceration in the Illinois Department of Corrections. On appeal, our argument is that the court abused its discretion in sentencing him to 10 years incarceration because it failed to give any consideration to Mr. Dosunmu's rehabilitative potential, that it ignored the evidence and mitigation that was presented. You got 10 years, does it? He got 10 years. And what could he have gotten? He could have gotten up to 15. It was a Class 1 between 4 and 15. Probation was an option. Was this a negotiated plea? No, this was an open sentence. He had a whole bunch of stuff, though, didn't he? He did have several other charges. There was credit card fraud. So he could have had credit card fraud. He could have had several other, but he ultimately only pled guilty to the Class 1 continuing financial enterprise. So he negotiated down? Well, he pled guilty to one without any agreement as to a sentence. In exchange, the state dismissed the other counts. Was there a cap? I don't believe there was a cap. I was not counseled during the original sentencing hearing, but I do not see any indication in the record that there was a cap. In fact, at the sentencing hearing, his counsel at that point asked for probation or any alternative impact incarceration. The state asked for 12 years, and the child court decided that 10 years was an appropriate sentence. It sticks to me that there was a 15 cap, but that's because... Well, that's a normal thing for a Class 1 felon. Yeah, that's where it came from. Yeah, it's probationable, but if it's incarceration, it's between 4 and 15 years without a state of term or any other factors applying. And he was ultimately sentenced to 10 years. Our argument is that the court failed to give any consideration to his rehabilitative potential, ignored the evidence of mitigation, and failed to overcome a presumption in favor of probation. Now, he was a student? He was. He was a student at SIU. He was 21 years old. He had graduated from the Lindbaum Math and Science Academy up near Chicago in 2011. He wasn't the best student in the world. Well, I thought he was probably the worst student in the world. Well, that's probably pretty competitive. I thought he was flunking almost every course. He did have some academic difficulties. What were they? I don't know to tell you the truth. Well, I thought it was in the brief. Well, it was in the brief that the trial court mentioned that he was on academic probation and was having difficulties. I don't know the reason why he was having academic difficulties. I know that he was still in school, barely, as far as SIU. Well, I thought it was in the brief that he was just about flunking every course he had. It was mentioned at the sentencing hearing by the trial court. By who? By the trial court. Okay. Yeah. So you got that out of the? Out of the record. Yeah. Yes, sir. One of the most troubling things in this, as far as the defendant is concerned, is that on the motion to reconsider, I argued that some factors of mitigation were present. And one of the factors that I argued was present was factor number six, that the defendant did not contemplate that his conduct would cause or threaten serious physical harm to another. That's a statutory factor in mitigation. Now, the court made kind of a puzzling statement after I made that argument. And I'm reading from the transcript on page 42. The trial court says, number six alleges that he did not contemplate that his criminal conduct would cause or threaten serious physical harm to another. That is just inherently incorrect. And the court goes on to describe the continuing financial enterprise. But that statement by the trial court indicates to us, at least, that the trial court was. . . He was, I guess, having other people, or he did, use credit cards to completely drain accounts or whatever. That's correct. So that's not harming anybody. So you'd give all your money up for nothing. That wouldn't be any harm. No, I would never argue that wasn't harm. What I would argue is that's a physical harm. And the factor of mitigation. . . Well, that's physical to you, though. Would you feel bad? I would feel bad. It would be a financial problem. It would be better than being shot. You can't get any credit or anything. Your house is going to be taken, you know. That would be a definite problem. You'd be depressed. It would be harm. I would think you would. It would definitely be harm. Oh, okay. But our argument is that it's a physical harm. That isn't physical? Depression's not physical? I guess it will have physical effects. But I think someone that was a victim of a . . . Just don't commit suicide when you feel bad. Well, that's a physical . . . Suicide, I think somebody who was shot or stabbed would argue that a person that was a victim of a financial crime was not in a bad condition. You know, physical harm is worse. Any harm is bad. But physical harm is worse. Was he in this long enough to ever show how much money was taken? I don't know. Was that ever presented in any . . . It was. In the sentencing, there was testimony from the investigating officer. How much did they say was . . . that he had . . . I believe . . . I would have to go back and look. I think that he said there was . . . He declined to guess how much there was in total. But he said that there was . . . Let's see here. Well, there's potential for millions. But, I mean, did he . . . How much did he get? I don't know off the top of my head. And it wasn't in . . . It's not in the PSA? I don't think that it was. I believe Detective Weisenberger testified that it was thousands of dollars in Jackson County. And I think he declined to speculate how much it was in other counties or other jurisdictions. It was in the . . . Well, how many other places was this going on? Well, the allegations were that it happened in other jurisdictions. In Champaign County, he was arrested and found with a credit card unboxing machine and money packs in his car. I think what the overall thing was is that Mr. Desani was accused of buying stolen credit card numbers off the Internet from an Internet site in Europe and that they would take the stolen credit card numbers and emboss new credit cards with those numbers but with his name on them. And so then they would go out and use these cards to buy goods and services. When you say they, that means more than one person. There was. There were other people charged in this. I was under the impression . . . I don't know where I'm getting this. There was even other states. I believe there were some allegations that . . . About seven or eight or nine. There was some activity in Missouri. That is not part of this conviction, though. This conviction was for continuing financial enterprise. For some reason, I got out west. Was it west of Missouri? I believe it was in Missouri. I don't know of any other states out west. Okay. I don't know where I'm getting that. Yeah. It was international in the fact that there was accounts being transferred over the Internet from places in Europe where you can apparently buy stolen credit card numbers. But, you know, back to my argument is that the court indicated that there was . . . When I argued that there was no physical harm, that that's just inherently correct. We concede there's harm. We just argue that there's not any physical harm. And that, you know . . . Wasn't that actually conceded by the state? It was conceded by the state, but when the judge sentenced him, he told us that we were incorrect in our argument that there was no physical harm. The state and the defendant at all stages argued that there wasn't any physical harm, but the court statement seems to indicate that the court believed that there was. So we believe not only does it ignore the factor of litigation, but it actually takes something that's not in the factual basis and applies it as an aggravating factor in the sentencing. Do you cite any cases where he got the . . . didn't get the max? I mean, in other words, every case that you cite, probably the person did get the max, and then maximum sentence, and then it could be knocked down a little bit. But all your cases that you cite, do you cite any where they got 10 when he could have got 15 or 5 when he could have got 10, you know, something like that? No, we don't. We don't do that. The case that I do cite is People v. Daly. And what was the possibility of getting, and what did they get? Well, in People v. Daly, the court sentenced Ms. Daly under a reckless homicide, which she had been charged with aggravated driving under the influence of a reckless homicide following a death, a traffic accident. The court had rejected a negotiated plea on the aggravated DUI. Ms. Daly came back and pled to reckless homicide. Okay. Now, where we think this is similar to Emmanuel DeSunday's case is that the Daly court, when sentencing her to prison, seemed to pull things that were from beyond the factual basis of the reckless homicide plea from the aggravated DUI charge by saying, you made the choice to drink, it wasn't an accident, you chose to drive, you chose to drink, and someone was killed. And that wasn't correct because the reckless homicide count doesn't involve an allegation of drinking. Okay, was that a Supreme Court case? No, that was the Fourth District. Fourth District, okay. And, you know, in that case, the sentence was later overturned because the court was bringing things from outside the factual basis and using those to aggravate the sentence. And we think that's what happened here, that there was no allegation of any physical harm to anyone at any point in this case, but yet the court says that, you know, well, we argue that there wasn't any physical harm, but that's totally incorrect. We also argue that the court failed to overcome the presumption for probation. In this case, there was a statutory presumption for probation. Now, obviously, a Class I felony can involve up to 15 years' imprisonment. But the court never really seemed to address the possibility of probation on the record. The State argues in their brief on page 7 that the trial court here, as in the case of people being watered, specifically found that probation or boot camp would deprecate the seriousness of the offense. You'll have an opportunity for rebuttal. Thank you, Your Honor. Counsel for Appellee. Thank you, Your Honor. May I please report, Mr. Barilla? Justice Welch, you're- And you're Mr. Davis. I'm sorry, Your Honor. I'm not very good about this. Most of the time. Justice Welch, you were correct when you had the impression that this had a broad application over a number of states. I believe there was testimony to the effect that there were 13 states involved in the financial crimes that were taking place here, and 20 banks were affected. Of course, numerous people were affected by that as well, by the defendant's actions. Multiple agencies were involved in the investigation of this offense. There was testimony, I believe, to that effect at the sentencing hearing. So a lot of the focus today has been on the court's comments, which were made, actually, at the time, where there was an argument that the court had failed to take into consideration that there was no physical harm involved. I think when you read the court's comments in context, probably the worst interpretation that you can give to it is the court, as it goes on in this commentary, starts to sort of conflate physical harm with general harm, the crime that was committed in general, which in turn, I think, was motivated by the court's concern both about the seriousness of the offense and the need for deterrence, which are obviously proper considerations for the trial court in determining the sentence. So without conceding anything in that point, I think that when you look at it from property context, there's really no harm to the defendant here because it's not a matter of the court actually saying, I found you actually suffered physical harm in the sense of, well, you had a cut to your face or you had to have surgery or something like that. What the court is essentially doing is emphasizing the fact, and this is obviously on the heels, as the court pointed out, I think Justice Moore, that the state had conceded that there was not physical harm in the literal sense of that, that this was a case that involved considerable harm philosophically and generally in the sense of the seriousness of the offense and the need for deterrence and the need for proper punishment because of the heinous nature of the crime. And that's really what the court was driving in when you look at the court's comments. So I don't believe that the comparison to the Daly decision is apt because in that case, what the sentencing court had done was that it had aggravated the sentence or considered as a factor in the sentence the consumption of alcohol, which played specifically into the court's decision-making in the Daly case, which the appellate court properly noted that that's related to a crime that's not even part of what the defendant had been found guilty of. In this case, the court, what we're really challenging here is a label, not an actual improper factor being considered. The court, when you read the comments, it starts out with, well, you're telling me there's no physical harm, and at the end of it, they're saying there's clearly serious harm that occurred here. And I think when the court's comments are read through in their entire context, particularly that last part of the argument when the court is referencing serious harm, it becomes manifestly apparent that the court's comments were not inferences of improper consideration but a reiteration of what the court had already gone by and gone over and made emphatically clear at the motion to reconsider sentencing that the defendant's crimes are so serious in this case that they're warranted a sentence in the mid-range for a Class I felony offense. So that argument was made before Judge Schwartz in the motion to reconsider? That's correct, correct. That's where the state had conceded. And he rejected that and made clear findings at that hearing? I'm sorry, Your Honor? Did he reject that then and make clear findings? Yes, correct. Yes, that's where the court had gone. The specific argument was made in the motion to reconsider that the court failed to consider a lack of physical harm, and that's where the commentary sort of came from at that point. I see. Okay, the state conceded. Yes, it's true, but look at what the defendant did. There was clearly financial harm, I believe, was the specific label of the state, and the court appeared to accept that. What about the probation argument? I'll read from your brief on page 7 that counsel was talking about. The trial court here, as involved, specifically found that probation or boot camp would deprecate the seriousness of the offense. In addition, the trial court found that the defendant belonged in the penitentiary so that he could not harm society. Now, you're saying that the trial court made those findings, and I believe counsel was saying they're not in the record, so the record will bear out what you're saying in your brief? Your Honor, a disclaimer. I don't have to do this necessarily. I came to this case late. I have not read the record. The record was already with the court by the time I came involved. There was another attorney there who obviously briefed us. But I believe both of those. There's a record cited. Yeah, both of those statements in the brief are citing to the transcript. Correct. Correct. So the court has a record. I'm assuming that even the fact that there are, in fact, even quotation marks in the brief, that there would be a direct representation of the court's comments at the time. And certainly it's consistent with the court's findings. I do have a copy, in fact, of the motion to reconsider here. Probably counsel hopefully made a copy of that. So you can see I was able to read from the comments there. Certainly consistent with those statements when we talk about the seriousness of the comments and consistent with the proposition that the court felt that probation was not an appropriate disposition in this case. And that's essentially what he's saying in what we're arguing about the other point. Yes. Correct. Why you're not getting probation. Why is that such a serious offense? Correct. In a way, a lot of the arguments here sort of converge on one overriding principle, is that the court's principal motivation for the sentence imposed in addition to considerations of the PSI. And I think that you'll see from the brief and you'll see from the record that the court did give consideration to all of the factors that it felt were necessary. It did acknowledge the fact that the defendant played guilty, which is probably the reason why it dropped the net file of the state's 12-year recommendation. That the defendant's, the extensive nature of his actions, and we're not talking about even just what he did, but what he did afterwards. There was testimony and there was evidence at the sentencing hearing of a video taken from the defendant's cell phone where he and his compatriots were celebrating, they were throwing $100 bills around, and there was evidence that they had made expensive purchases, things of that nature. So a lot of these things all compounded in the trial court's mind to show not only just the seriousness of the offense, a lack of remorse, but also it goes to the character, the nature of the character of the defendant. So that evidence was post-plea? That was at the sentencing hearing. Yes. And that was conduct after he entered his plea of guilt, is that correct? I think it's conduct that was required during the investigation of the case from the cell phone. So it was post-defense, if you will, so to speak, or concurrently with defense, not post-plea. I don't think that would be the case right now. But nonetheless, it's indicative of the defendant's particular mindset here. This is a wide-ranging, rather sophisticated enterprise. Clearly, I don't know, Your Honor, you asked about how much it was. There is a copy of the key assigned to the defendant's appendix. I could not find any reference to it there about the specific dollar amount. Undoubtedly, given the broad nature of both geographical and financial institution, it had to be considerable amount of money. Certainly, the defendants were spending a lot of money from the sentencing hearing testimony. So I think just sort of in a nutshell, to combine all the arguments in the brief, I think if the sentence was appropriate, the court exercised its discretion, and this court obviously exercises in its review, the determination of whether it reviews its discretion, which is a very deferential standard of review. The court had extensive evidence before it justifying its decision. It gave proper consideration. Really, the only thing the defendant can kind of latch on to is this physical harm aspect of it. And again, I have to emphasize that when you look at the court's comments and concepts, it's really nothing more than a reaffirmation of what it was saying. It was not a finding in the sense of the, quote, unquote, literal interpretation of physical harm. What it said was, oh, but there was harm here. There was definitely harm here, and you can't argue that there wasn't harm. There was considerable harm, and that really was a major factor for the court, and that was really consistent with the state's argument in its acknowledgement that there was not, per se, physical harm at all. So the court did not take it as something into improper consideration. In fact, it considered all the evidence proper and came to what we would submit to be a fair sentence in the middle range for a Class I felony offense. Just one other thing, Justice Welch, I know that you'd ask whether this was part of a plea. It looked like there were a number of charges that were dismissed, including a Class X felony offense was one of the ones that were. So, you know, it was a deal. Obviously, it had some benefit to the defendant, but nonetheless, all these factors still come into the court's consideration to make its determination of an appropriate sentence. Does the court have any further questions for me? Thank you, counsel. Thank you very much. Rebuttal. I'd just like to address the, in page 7 of the state's brief, they say that the court here, as it were, found that probation or boot camp would deprecate the seriousness of the offense. On page 29 of the transcript at the sentencing hearing, the court states, I totally agree with the state that boot camp deprecates the seriousness of this offense in the amount which Mr. Gilsunyu has involved himself and orchestrated this criminal conspiracy. Even though we're not sentencing him on that, we're sentencing him on the Class I continually financial crimes enterprise. But I'm going to sentence him to the Department of Corrections for 10 years. My argument is that he does mention that boot camp would deprecate the seriousness, but he doesn't mention probation. Now, could the state make an argument that it assumes that he also considered probation? I guess they could, but it doesn't seem to me that in the transcript he ever mentioned considering probation. He mentioned only boot camp as deprecating the seriousness of the offense. Also, there was some question earlier about the monetary amount of the crime within Jackson County. Detective Weisenberger, at the sentencing hearing on page 8 of the transcript, testified that my estimate for the court would be very rough because there's a lot of figures and other elements involved. But what I came up with this morning, just going over the case file, was approximately $7,000 to $10,000 just in this jurisdiction. So while there may have been damage done in other jurisdictions, that's what Detective Weisenberger, the investigating officer, testified that the damage was in Jackson County. Thank you. Thank you, counsel. The court will take this matter under advisement and issue a decision in due course.